**HIS MAJESTY'S GOVERNMENT FOR UNITED KINGDOM OF GREAT BRITAIN, etc. v. The FLYING ARROW et al. The BLACK SWAN.**

United States District Court
S. D. New York.
April 26, 1951.

McNutt, Scoll, Longcope, Proctor & Lee, New York City, Edwin Longcope, New York City, of counsel, for libellant.

James W. Ryan, New York City, for respondents.

IRVING R. KAUFMAN, District Judge.

The libel in this action was filed on February 6, 1951 and service of citation was made upon the respondent Isbrandtsen Company, Inc. on February 7, 1951. On March 20, 1951 respondents' proctor filed a document described as a "Suggestion of Want of Jurisdiction and Exceptive Allegations in Support Thereof". On April 11, 1951 respondent Isbrandtsen filed "Excep-

tions" to the libel; on April 13, 1951 respondent filed "Additional Exceptions" and on April 18, 1951 served "Supplemental Exceptions".

Libellant has moved to bring the first "document" on for hearing and has also moved to dismiss the exceptions to the libel in the various forms presented as being filed too late. Rule 13 of the Admiralty Rules of this Court requires that " * * * exceptions to the libel * * * shall be filed within three weeks after the return day, or within such further time as may be allowed."

No further extension of time was granted here.

■ The motion to dismiss the "Exceptions", "Additional Exceptions" and "Supplemental Exceptions" filed on April 11, 1951 and subsequent thereto is hereby granted.

■ However, proctor for the respondents upon the argument of the motions stated that his "exceptions" are substantially the same as his "Suggestion of Want of Jurisdiction and Exceptive Allegations" and merely questions the jurisdiction of the Court to adjudicate this action. Since the question of jurisdiction can be raised at any time, and since the objections of respondent Isbrandtsen are limited substantially to this point, a determination of the question of jurisdiction will be made.

Briefly the facts in this action are as follows: The libel alleges that on January, 9, 1950 the vessel Flying Arrow, owned by respondent Isbrandtsen Company, Inc. was shelled by the Chinese Nationalist warship Yung Feng in Chinese waters; that the Flying Arrow was damaged and on fire; that the Black Swan rendered assistance to the Flying Arrow in putting out the fire and saving the ship; and therefore the British Government as owner of the Black Swan brings suit for salvage.

The respondent alleges that the libel is a British tax on American vessels; that since the United States Government has never asked salvage for rescuing British merchant vessels, that "comity" prevents the British Government from bringing this libel; and that salvage suits cannot be

brought by a warship or on behalf of services rendered by a warship.

■ The first two points mentioned above and others alleged by proctor for the respondents are without merit. For example, "comity" has been grossly misused by the proctor for respondents. Comity refers to courtesies extended to foreign governments in our courts and is usually extended to those countries granting our nation reciprocal courtesies in their courts. Merely because our Government has not seen fit to bring salvage actions in the British courts does not require that we forbid our courts to such suits by the British Government. If the British *refused* to permit the United States to bring such suits in their courts, then possibly we would deny them access to our courts for such suits on "comity" grounds (or lack of comity). Perhaps an outgrowth of suits like the instant one might be the bringing of salvage suits by the United States Government or its warships for service to British merchantmen, but be that as it may, as yet "comity" does not enter the picture.

■ As to the third point raised by the respondent—that warships (or their governments) cannot sue for salvage services, the legal authority is completely contrary to respondent's view.

As it is stated in Volume 1, Benedict on Admiralty:

"The right to salvage depends solely upon the consideration that property has been saved to the owner from maritime peril by one who has no such relation to it as contractually obligates him so to save it." (p. 334.)

"Salvage does not depend upon the character of the parties rendering the service nor upon the character of the assistance rendered, nor upon the kind of peril or cause of loss, nor upon the national character or ownership of the property saved or of the owners." (p. 335.)

"Salvors may be persons in the employ of the nation as officers and seamen of vessels of war. * * *" (p. 336.)

"The government *does not ordinarily* ask for salvage when services are rendered by its public vessels, whether of the military establishments—the Navy and the Army—or by the Coast Guard, the Lighthouse Service, and the like, and the personnel have no right to demand salvage for services rendered as part of their public duty.

The United States has been held to have an inherent right to salvage unrestricted by statute." (pp. 346–347.) (Emphasis added.) See also Robinson on Admiralty, pp. 759–761.

In the recent case of Hamburg-American Line v. United States (The Odenwald) (1 C.A.1948) 168 F.2d 47, 1948 A.M.C. 888, a suit by the United States for salvage services rendered by two warships was allowed, and in the case of United States v. The James L. Richards, D.C.Mass. 1949, 82 F.Supp. 12, the right of the British Government (or the United States Government as assignee) to bring suit for services by a British Government vessel to an American vessel was recognized, though the libel was dismissed as being untimely brought.

The right of a warship to recover for salvage of a merchantman was stated by our courts as early as 1801 in the case of Talbot v. Seeman, 1 Cranch 1, 5 U.S. 1, 2 L.Ed. 15. In 1920 Congress expressly provided in section 10 of the Suits in Admiralty Act, 46 U.S.C.A. § 750, that the United States could recover for salvage services rendered by Government merchant vessels. Subsequently in a suit by the United States for salvage services rendered by an army transport it was held that the statute relating to merchant vessels did not detract from the inherent right of the Government to sue for salvage on behalf of any of its vessels. The Impoco, D.C.S.D.N.Y.1922, 287 F. 400. Judge Ward, in his opinion in that case, stated:

"* * * the United States relies upon its inherent right as an owner to recover compensation for salvage services in accordance with the ancient doctrine of the maritime law. Such services are voluntary, and they are just as voluntary in the case of men of war and public vessels generally as they are in the case of private vessels; i. e., it is no part of their duty to render such services. While I can see that a sovereign would and perhaps should consider it beneath his dignity to ask for com-

pensation for services in saving property at sea, I can imagine no legal reason to prevent him from doing so. I know it was, and suppose it still is, the practice of the railroad companies never to ask compensation for salvage services rendered by their tugs in the harbor of New York. This was not because of any lack of right to do so, but out of a sense of propriety, which is an even more appropriate reason for the same practice pursued by the United States in case of its vessels.

"The claimant relies upon certain acts of Congress which do show the long practice of the United States not to ask for salvage compensation, but which, I think, in no respect affect its right to do so. * * *" 287 F. at page 402.

Accordingly there is no merit in respondent's "Suggestion of Want of Jurisdiction and Exceptive Allegations" and respondent Isbrandtsen Company, Inc. is directed to file its answer to the libel herein. Settle order.